Filed 2/19/16  U.S. Grant Hotel Ventures v. American Property Management Corp. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| U.S. GRANT HOTEL VENTURES, LLC, | D066490 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. GIC 845130) |
| AMERICAN PROPERTY MANAGEMENT CORPORATION et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of San Diego County, Joan Lewis, Judge.  Reversed.

Williams Iagmin and Jon R. Williams for Defendants and Appellants.

Procopio, Cory, Hargreaves & Savitch, Anthony J. Dain, Frederick K. Taylor and Brian J. Kennedy, for Plaintiff and Respondent.

American Property Management Corporation (APMC), APMC San Diego Hotel Management, LLC (Hotel Management), and Michael Gallegos appeal from an order awarding U.S. Grant Hotel Ventures, LLC (USG) attorney's fees as the prevailing party on its tort claims for breach of fiduciary duty and conversion arising out of a contract.

Appellants contend the trial court erred in awarding USG its attorney's fees. We agree and reverse the order.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2003, Sycuan Investors — U.S. Grant, LLC (Sycuan Investors) formed USG to own and acquire the U.S. Grant Hotel (the hotel) through the adoption of an Operating Agreement. The Operating Agreement named Hotel Management as the manager of USG. The Operating Agreement anticipated that USG and Hotel Management would enter into another agreement whereby Hotel Management would manage the hotel operations. Two days later, USG and Hotel Management executed the Hotel Management Agreement (Managing Agreement) setting forth the terms and conditions under which Hotel Management would manage the hotel.

In 2005, USG notified Hotel Management that it was terminating the Managing Agreement due to alleged "mismanagement, misappropriation of funds and breach of fiduciary duty." Thereafter, USG sued APMC, Hotel Management, and Gallegos alleging, among other things, that APMC and Hotel Management breached the Managing Agreement and APMC, Hotel Management and Gallegos breached the Operating Agreement. In turn, Hotel Management and Gallegos filed a cross-complaint against USG asserting, among other things, that Hotel Management was entitled to liquidated damages due to USG's wrongful termination of the Managing Agreement.

USG prevailed on the claims, but this court reversed the judgment on the ground the trial court erred in not permitting extrinsic evidence offered by Hotel Management. (See *U.S. Grant Hotel Ventures, LLC v. American Property Management Corp. et al.*

2

(Oct. 16, 2008, D048746) [nonpub. opn.], (*U.S. Grant I*).)  On remand, the trial court granted USG's motion to dismiss the cross-complaint finding USG was entitled to sovereign immunity as a subordinate economic entity of the Sycuan tribe.  This court rejected USG's belated assertion of sovereign immunity, reversed the lower court's dismissal of Hotel Management and Gallegos's cross-complaint, and remanded the matter for further proceedings.  (*American Property Management Corp. v. Superior Court* (*U.S. Grant Hotel Ventures, LLC*) (2012) 206 Cal.App.4th 491, 495, 508.)

On remand, the jury rejected USG's claim that Hotel Management breached the Operating Agreement on the ground USG and Hotel Management did not enter into the Operating Agreement.  The jury, however, found in favor of USG on its claims for breach of the Managing Agreement, breach of fiduciary duty and conversion of $1,350,000 from an operating account.  The jury awarded USG the total of $1,350,000 in damages.

Hotel Management's operative cross-complaint alleged that USG breached the Managing Agreement by wrongfully terminating the agreement and refusing to pay fees and liquidated damages.  On this claim, the jury found in favor of Hotel Management and awarded it liquidated damages and other damages for a total of over $5 million.  Posttrial motions resulted in a conditional remittitur which reduced Hotel Management's damages to about $3.2 million.

Thereafter, the trial court granted Hotel Management its attorney's fees and costs under Civil Code section 1717 as the prevailing party under the Managing Agreement, with Hotel Management receiving about $3.35 million in attorney's fees.  USG then sought to be declared the prevailing party under Code of Civil Procedure section 1021 on

3

the Operating Agreement for its success on its tort claims for breach of fiduciary duty and conversion arising out of the Operating Agreement. The trial court awarded USG about $4.2 million in attorney's fees as the prevailing party under the Operating Agreement. Hotel Management timely appealed from this postjudgment order. Although there are two other appellants, the order awarded fees solely against Hotel Management; accordingly, we limit our discussion to this party.

## DISCUSSION

### I. *General Legal Principles*

In California each party to a lawsuit ordinarily must pay his or her own attorney's fees. (*Musaelian v. Adams* (2009) 45 Cal.4th 512, 516.) "Code of Civil Procedure section 1021 codifies the rule, providing that the measure and mode of attorney compensation are left to the agreement of the parties '[e]xcept as attorney's fees are specifically provided for by statute.' " (*Ibid.*) (Undesignated statutory references are to the Code of Civil Procedure.) One such statute is Civil Code section 1717 which provides "[i]n any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." (Civ. Code, § 1717, subd. (a).)

The purpose of Civil Code section 1717 is to establish a mutuality of remedy and "prevent oppressive use of one–sided attorney's fees provisions." (*Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 128.) To accomplish this purpose the statute has been

4

interpreted to provide for an award of attorney's fees to a defendant who has not signed a contract, but is sued as if it had, if the plaintiff would have been able to recover attorney's fees under the contract if the plaintiff prevailed. (*Ibid.*) "When an action involves multiple, independent contracts, each of which provides for attorney fees, the prevailing party for purposes of Civil Code section 1717 must be determined as to each contract regardless of who prevails in the overall action. [Citation.] The fact that a party 'obtained a higher net recovery in the lawsuit is irrelevant to the determination of which party prevailed on any particular action on a contract.' " (*Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.* (1996) 47 Cal.App.4th 464, 491 (*Arntz*).)

To invoke Civil Code section 1717 and its reciprocity principles a party must show (1) it was sued on a contract containing an attorney fee provision; (2) it prevailed on the contract claims; and (3) the opponent would have been entitled to recover attorney's fees had the opponent prevailed. (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 610-611.) Noncontract claims are not subject to Civil Code section 1717 and its reciprocity principles. (*Id.* at p. 615.) Thus, in determining whether Civil Code section 1717 applies, the court disregards any tort claims included in the action. (*Ibid.*)

In contrast, under section 1021 "parties may validly agree that the prevailing party will be awarded attorney fees incurred in any litigation between themselves, whether such litigation sounds in tort or in contract." (*Xuereb v. Marcus & Millichap, Inc.* (1992) 3 Cal.App.4th 1338, 1341.) "If the attorney fee provision encompass[es] noncontractual claims, the prevailing party entitled to recover fees normally will be the party whose net recovery is greater, in the sense of most accomplishing its litigation objectives, whether or

not that party prevailed on a contract cause of action."  (*Maynard v. BTI Group, Inc.* (2013) 216 Cal.App.4th 984, 992.)  The question to be determined is which party prevailed in the lawsuit, not which party prevailed on the contract.  (*Id.* at p. 993.)

We review for abuse of discretion a trial court's determination that a litigant is a prevailing party, along with its award of fees and costs.  (*Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1332.)  "However, [if] the issue . . . involves the interpretation of a statute, [it is] a question of law that we review de novo."  (*Ibid.*)

## II.  *Analysis*

Hotel Management asserts the attorney's fee award in favor of USG under the Operating Agreement must be reversed because USG was not a prevailing party entitled to its attorney's fees under the fee provision contained in the Operating Agreement.  We agree.

USG sought to be declared the prevailing party under section 1021 on the Operating Agreement for its success on its tort claims for breach of fiduciary duty and conversion arising out of the Operating Agreement.  USG did not seek attorney's fees under Civil Code section 1717 and conceded in its motion that this statute does not apply.

As a threshold issue, USG confusingly argues legal concepts specific to Civil Code section 1717, including the concept that when an action involves multiple, independent contracts there can be a prevailing party designation as to each separate contract sued upon.  (*Arntz*, *supra*, 47 Cal.App.4th at p. 491.)  We disregard these arguments and focus on whether the trial court properly declared USG to be the prevailing party under section 1021 for USG's success on its tort claims for breach of fiduciary duty and conversion

6

arising out of the Operating Agreement. To answer this question we turn first to the attorney's fee provision in the Operating Agreement.

The Operating Agreement provided: "If any legal action . . . is commenced arising out of this Agreement, the prevailing party shall be entitled to an award of its attorneys' fees and expenses . . ." "The phrase 'prevailing party' shall include a party who receives substantially the relief desired whether by dismissal, summary judgment, judgment or otherwise." The language of this provision is broad enough to encompass both contract actions and actions in tort. (*Lerner v. Ward* (1993) 13 Cal.App.4th 155, 157-158, 160 [noting the language " 'arising out of this agreement' " supported an award of attorney's fees for tort-based causes of action].)

The next question is whether USG has a right to recover attorney's fees under the Operating Agreement. Sycuan Investors and Hotel Management entered into the Operating Agreement. The Operating Agreement outlines the creation of USG by Sycuan Investors and provides that Hotel Management will manage USG. USG is *not* a party to the Operating Agreement and the attorney's fee provision does not identify USG as a party entitled to the benefit of this provision.

The jury expressly found USG did not enter into the Operating Agreement with Hotel Management; a finding USG did not challenge on appeal. The trial court acknowledged that USG was not a signatory to the Operating Agreement, but nonetheless found USG could recover attorney's fees on the ground (1) USG could be considered a party to the Operating Agreement and (2) the law contemplates that a limited liability company may enforce operating agreements. The trial court erred.

7

USG moved to strike that portion of Hotel Management's reply brief arguing the trial court erred in finding USG was a party to the Operating Agreement in ruling on USG's attorney's fee motion. USG asserts Hotel Management did not raise this argument in its opening brief. The motion is denied. The question whether USG is entitled to an attorney's fee award under section 1021 presents a question of law. Accordingly, whether USG was a de facto "party" to the Operating Agreement under the Corporations Code or some other theory is a question we must address regardless of whether Hotel Management raised it.

In concluding that USG was a party to the Operating Agreement, the trial court relied on certain portions of the Operating Agreement describing various obligations of USG under the Operating Agreement, namely paragraphs: 2.4, 2.6, 2.8, 2.9 and 4.4. Briefly, these paragraphs provide that USG will: indemnify Sycuan Investors or Hotel Management; enter into the Managing Agreement; reimburse Hotel Management's expenses in connection with the formation and organization of USG; maintain bank accounts in its name; and be liable for the return of Sycuan Investors's capital account. Even broadly interpreted, none of these paragraphs and nothing in the Operating Agreement provide that USG can be considered a "party" to the Operating Agreement entitled to recovery under the attorney's fee provision therein. Significantly, the trial court and USG ignored that portion of the Operating Agreement providing that it "shall inure to the benefit of and be binding upon [Sycuan Investors] and [Hotel Management] . . . [and] their respective successors and assigns." USG cited no authority to support its proposition

8

that a nonsignatory to a contract is entitled to enforce an attorney's fee provision in the contract on noncontract claims under section 1021.

*Moallem v. Coldwell Banker Com. Group, Inc.* (1994) 25 Cal.App.4th 1827 is instructive. In this case, plaintiff successfully sued its real estate broker for negligence and breach of fiduciary duty and then sought attorney's fees based on a fee provision in the brokerage agreement. (*Id.* at pp. 1828-1829.) Although the brokerage agreement contained a broad attorney's fee provision, the trial court properly denied plaintiff's fee motion because the fee provision limited the right to recover attorney's fees to the broker only; it did not authorize the plaintiff to recover attorney's fees on any type of claim. (*Id.* at pp. 1831-1832.)

The trial court also cited Corporations Code sections 17005 and 17701.11 for the proposition that a limited liability company may enforce operating agreements. These statutes are inapplicable.

Subdivision (a) of former Corporations Code section 17005 provided: "Except as provided in subdivisions (b) and (c), relations among members and between the members and the limited liability company are governed by the articles of organization and operating agreement. To the extent the articles of organization or operating agreement do not otherwise provide, *this title governs relations among the members and between the members and the limited liability company*." (Italics added.) (Former Corp. Code, § 17005, as amended by Stats. 1996, ch. 57, § 5, and repealed by Stats. 2012, ch. 419, § 19, operative Jan. 1, 2014.)

USG is a limited liability company.  Sycuan Investors is the sole member of USG.
Hotel Management is designated in the Operating Agreement as the manager of USG, it is
not a member.  Put simply, the plain language of former Corporations Code section 17005
does not advance USG's argument that it may recover attorney's fees on tort claims against
a nonmember on an operating agreement to which it is not a party.

The trial court also erroneously relied on newly enacted Corporations Code section
17701.11.  In 2012, the Legislature enacted the California Revised Uniform Limited
Liability Company Act (Corp. Code. § 17701.01 et seq.).  (Stats. 2012, ch. 419, § 20,
operative Jan. 1, 2014.)  Subdivision (a) of Corporations Code section 17701.11 provides
"[a] limited liability company is bound by and may enforce the operating agreement."

Sycuan Investors, however, formed USG under a prior version of the Corporations
Code in effect at that time.  Additionally, the amendments which added Corporations
Code section 17701.11 became effective January 1, 2014 (Corp. Code, § 17713.13), and
do not affect an action commenced, proceeding brought, or right accrued before January 1,
2014 (Corp. Code, § 17713.03).  Here, USG commenced its action in 2009.  Accordingly,
newly enacted Corporations Code section 17701.11 does not advance USG's argument
that it may recover attorney's fees on tort claims against a non-member on an operating
agreement to which it is not a party.

Moreover, the Operating Agreement expressly provides that the sole purpose of
USG was to own, operate and manage the hotel and all property incidental to the hotel and
USG "shall not engage in any activities or exercise any powers" beyond those enumerated
in the Operating Agreement, "regardless of whether permitted to do so under the laws of

10

the State of California."  This provision supports the conclusion that Sycuan Investors and Hotel Management did not intend to give USG the right to sue under the Operating Agreement.

Finally, Hotel Management argued in its opening brief that the attorney's fee award in favor of USG could not be affirmed on third party beneficiary theory, noting that USG advanced "a vague third party beneficiary theory throughout its underlying briefing."  We reviewed USG's motion and conclude that USG did not rely on a third party beneficiary theory below.  The trial court did not rely on this theory and USG cannot rely on it now. (*Perez v. Grajales* (2008) 169 Cal.App.4th 580, 591-592 [arguments raised for the first time on appeal are deemed forfeited].)

In any event, USG cited no authority allowing a nonsignatory to a contract to enforce a contractual attorney fee provision under section 1021.  Although a third party beneficiary theory has been applied to award fees under Civil Code section 1717, a third party beneficiary may not invoke a contractual attorney fee provision unless the contracting parties specifically intended that provision to benefit the third party.  (*Sessions Payroll Management, Inc. v. Noble Const. Co., Inc.* (2000) 84 Cal.App.4th 671, 680-681; *Super 7 Motel Associates v. Wang* (1993) 16 Cal.App.4th 541, 546.)  USG pointed to nothing in the Operating Agreement demonstrating Sycuan Investors and Hotel Management intended the attorney's fee provision to benefit USG, and the Operating Agreement expressly provided that the Operating Agreement benefited and bound only Sycuan Investors and Hotel Management.

11

Accordingly, the order awarding USG its attorney's fees under section 1021 is reversed.

## DISPOSITION

The order is reversed.  Hotel Management is awarded its costs on appeal.


McINTYRE, J.

WE CONCUR:


HUFFMAN, Acting P. J.


NARES, J.